**FOR PUBLICATION**



**FILED**
Dec 16 2014, 9:34 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**APRIL L. BOARD**
Crown Point, Indiana

ATTORNEY FOR APPELLEE:

**JOHN W. PETERS**
Portage, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE MARRIAGE OF | ) | |
| HELEN FISHER | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| and | ) | No.  64A05-1403-DR-150 |
| | ) | |
| RONALD FISHER, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable John Shanahan, Judge Pro Temporare
Cause No. 64D02-0601-DR-808

**December 16, 2014**

**OPINION - FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

Following dissolution of the marriage of Helen Fisher and Ronald Fisher, Helen appeals the trial court's division of property. Helen raises the following issues for our review: (1) whether the trial court abused its discretion in valuing and distributing an IRA account; and (2) whether the trial court abused its discretion by declining to deviate from the presumptive fifty-fifty split of marital assets. Concluding the trial court erred in its valuation and distribution of the IRA, but that the trial court did not abuse its discretion by dividing the marital assets evenly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## Facts and Procedural History

Helen and Ronald were married on May 9, 1969. Ronald was a longtime employee for EJ&E Railway. He began working there in June 1962. In May 1993, Ronald was involved in a car accident resulting in disability. He retired from EJ&E two years later and received a lump sum pension payout that was rolled over into an IRA. Ronald's employment with EJ&E also entitles him pension benefits that are comprised of "Tier I" and "Tier II" benefits, which are disbursed monthly. For the purposes of these dissolution proceedings, Tier I benefits are non-divisible, but Tier II benefits are divisible.

Helen and Ronald filed for a dissolution of marriage on January 27, 2006. In March 2006, the parties entered into an agreement that allowed them to remain in the marital home together, during which time Ronald paid all expenses, including Helen's

medical expenses, and provided Helen with $500 per month for spending money. In 2009, the marital home was sold, the parties were living separately, and Ronald was relieved of all financial responsibility for Helen. Ronald was receiving Tier I and Tier II benefits of approximately $2,229 per month ($1526 for Tier I and $703 for Tier II), while Helen was receiving a spousal annuity of approximately $1,079 per month. The parties agreed to allow the dissolution proceedings to remain pending until September 21, 2011, in order to maximize the estate and allow Helen to reach an age at which she could receive a divorced spouse annuity from the railway. Helen's divorced spouse annuity pays $600 per month, and that amount will increase to $853 per month on September 1, 2015.

In the two years prior to final dissolution, Ronald took two distributions from the IRA in 2012 and 2013 in the amounts of $19,046.68 and $17,695.13, respectively. A final hearing was held on November 18, 2013, at which time the value of the IRA was $160,925.37. On February 27, 2014, the trial court entered its final dissolution order and distributed the marital assets as follows:

5. The sum of $191,409.40 has been distributed to the parties from the sale proceeds of the marital residence. The Wife has received $121,409.00 and the Husband has received $70,000.

6. The Wife received her 2000 Pontiac automobile with an agreed value of $4,700.00; and the Husband received his 2004 Chevrolet automobile with an agreed value of $8,500.00.

7. The Court finds that the parties previously divided their personal property and that same was done fairly and equitably.

8. The parties have an IRA account with Western Southern with total value of $174,031.30. The coverture value thereof is 77.42%, or $134,735.03; from which the Husband received distributions in 2012 and 2013 in the total amount of $38,093.36. The Court finds that the after tax value of said distributions to be $29,383.36.

3

9. The remaining coverture value of the IRA account is $105,351.67.
10. The Husband received a life insurance policy containing a cash value of $3630.02.
11. There is $5,029.00 in [an attorney] trust account . . .
12. The Net total of the Marital Estate is $348,003.45 . . .
13. The Court orders final distribution as follows:

| WIFE $174,001.72 (50%) | | HUSBAND $174,001.72 (50%) | |
|---|---|---|---|
| Proceeds received from sale of Marital Residence | $121,409.40 | Proceeds received from sale of Marital Residence | $70,000.00 |
| Pontiac Grand Am | 4,700.00 | Chevrolet Malibu | 8,500.00 |
| IRA | 42,863.32 | IRA Dist (After tax) | 29,383.36 |
| SWJ Trust Account | 5,029.00 | Life Insurance | 3,630.02 |
| | | IRA | 62,488.34 |

14. The Court orders that the Wife receive 100% of Husband's Tier 2 Pension benefits.
15. The Court orders that Husband pay . . . the sum of $5,000.00 for Wife's attorney fees.

Appellant's Appendix at 4-5. Helen now appeals that order.

Discussion and Decision

I. Standard of Review

Helen contends that the trial court incorrectly divided marital property—specifically, the IRA—and abused its discretion by failing to deviate from a fifty-fifty split of assets in favor of Helen. When reviewing a claim that the trial court improperly divided marital property, we consider whether the trial court abused its discretion. Chase v. Chase, 690 N.E.2d 753, 755 (Ind. Ct. App. 1998). An abuse of discretion occurs

where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. Id.

## II. IRA Account

Helen takes issue with the trial court's handling of the IRA, and she raises numerous concerns in that vein. She maintains that the trial court (1) incorrectly determined the total value of the IRA account; (2) abused its discretion by using a coverture fraction to determine what portion of the IRA's value was marital property; and (3) abused its discretion by utilizing the after-tax value of monies withdrawn from the IRA by Ronald while the dissolution was pending. As we will explain below, although we do not believe that use of a coverture fraction was an abuse of discretion, we agree that the trial court used an incorrect value of the IRA and improperly considered only the after-tax value of money distributed to Ronald from the IRA prior to the final dissolution.

## A. Value of the IRA

First, Helen argues that the trial court's valuation of the IRA at $174,031.30 was improper. It is undisputed that at the time of the final hearing, the IRA had a value of $160,925.37. Ronald's brief is sparse on this issue, pointing out that the $174,031.30 assessment was the value of the IRA as of August 15, 2012 but admitting "[i]t is a fair argument" that the $160,925.37 value should have been used by the trial court. Brief of Appellee at 9. Ronald speculates, however, that the trial court used a different value in order to use after-tax values when considering the IRA distributions taken by Ronald prior to the final dissolution. We find this to be a rather thin justification, and as we will explain below in further detail, the trial court's consideration of the after-tax value of

5

Ronald's IRA distributions was error in itself. Moreover, use of the $174,031.30 valuation appears illogical because it ignores Ronald's 2013 distribution, which the trial court later recognizes when divvying up the IRA. We conclude the trial court abused its discretion in determining the value of the IRA. Considering Ronald's IRA distributions as marital property, as is appropriate, the IRA's supposed value for the purposes of property division is thus $197,667.18 ($160,925.37 + $19,046.68 + $17,695.13 = $197,667.18).[1]

## B. Coverture Fraction

Second, Helen challenges the trial court's use of a coverture fraction to determine what portion of the IRA, which was a direct result of Ronald's pension, is attributable to the marriage.

> The "coverture fraction" formula is one method a trial court may use to distribute pension or retirement plan benefits to the earning and non-earning spouses. Under this methodology, the value of the retirement plan is multiplied by a fraction, the numerator of which is the period of time during which the marriage existed (while pension rights were accruing) and the denominator is the total period of time during which pension rights accrued.

Hardin v. Hardin, 964 N.E.2d 247, 250 (Ind. Ct. App. 2012) (citation omitted) (emphasis omitted). In this case, the trial court used a coverture value of 77.42%, which took into account thirty-one years of work and twenty-four years of marriage (24 / 31 = 77.42%).[2]

---

[1] In reaching this figure, we take note of a conflict: the actual value of Ronald's IRA distributions ($36,741.81 = $19,046.68 + $17,695.13) and an incorrect value stated in a mediation agreement signed by the parties ($38,093.36). Exhibits reflecting the correct distribution total of $36,741.81 were admitted into evidence, and Helen's own brief concedes their accuracy despite her assertion that the value stated in the mediation agreement should be used. See Brief of Appellant at 3 n.1. We see no reason to apply incorrect values for the IRA distributions.

[2] Although Ronald was employed at EJ&E for thirty-three years, he did not accrue pension rights for the two years during which he was disabled and not working.

Helen contends that the trial court's consideration of the first seven years Ronald worked at EJ&E prior to marriage is improper because he was not entitled to a pension until he had given ten years of service to the company.[3]  It may be true that Ronald's pension did not exist until he logged ten years of service, but this does not discount the fact that his first seven years of employment were integral to earning his pension.  Helen has not provided us with case law supporting her argument that a coverture fraction is inapplicable to years of employment prior to, but necessary for, a vested pension.  We are not inclined to create such a rule.  With the deference we give the trial court in these matters, we do not conclude the use of a coverture fraction in these circumstances was an abuse of discretion.

### C.  Value of IRA Distributions to Ronald

Third, Helen argues that the trial court erred by considering only the after-tax value of monies withdrawn from the IRA by Ronald while simultaneously treating the remainder of the IRA at its pre-tax value.  Ronald claims that the trial court's use of an after-tax value is permissible because Helen was awarded a greater share of the proceeds from the marital home, which was after-tax dollars, and the trial court's use of an after-tax value of the IRA disbursements was an attempt to offset any benefit Helen gained by receiving a larger share of the sales proceeds from the marital home.

---

[3]  A majority of Helen's initial brief addressing the coverture fraction is spent attempting to demonstrate that 78.78%, rather than 77.42%, would be the correct coverture value, and that she is unsure how the trial court reached the percentage it did.  Ronald's brief explains the matter quite succinctly, and Helen's reply brief does not pick up the point a second time.  Because we believe 77.42% to be the correct figure, we address only Helen's alternate argument, which is that no coverture fraction should have been applied at all.

As Ronald correctly points out, Indiana law states that "[t]he court, in determining what is just and reasonable in dividing property under this chapter, shall consider the tax consequences of the property disposition with respect to the present and future economic circumstances of each party." Ind. Code § 31-15-7-7. But that statutory provision is an acknowledgement that there are varying tax consequences depending upon the assets at issue and how they are divided; it is not a license to distort the value of individual assets by assigning a pre-tax value to one person and after-tax value to the other. Moreover, Ronald's rationalization for the trial court's treatment of the IRA distributions is speculative, and any alleged disproportionality could have been easily remedied by dividing the marital home proceeds more evenly amongst the parties. In sum, we conclude that the court abused its discretion by taking a single asset, the IRA, and assigning pre-tax and post-tax values to portions of the asset in a discriminatory fashion.

## D. Value and Distribution of the IRA

To summarize, the appropriate start value of the IRA is $197,667.18, and the trial court is within its discretion to utilize a coverture fraction equal to 77.42%, which results in a coverture value of $153,033.93. Ronald's two IRA distributions, totaling $36,741.81 pre-tax, should be counted against Ronald, resulting in $116,292.12 to be divided amongst the parties in accordance with the trial court's decision to carry out an equal division of the marital assets.

## III. Equal Division of Marital Property

Last, Helen claims the trial court abused its discretion by failing to deviate from a fifty-fifty split of the marital assets. Indiana Code section 31-15-7-5 provides that "[t]he

8

court shall presume that an equal division of the marital property between the parties is just and reasonable." However, the trial court may deviate from the presumptive equal division when a party presents relevant evidence rebutting the presumption. Id. Such relevant evidence includes the following:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
> (2) The extent to which the property was acquired by each spouse:
> > (A) before the marriage; or
> > (B) through inheritance or gift.
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
> (5) The earnings or earning ability of the parties as related to:
> > (A) a final division of property; and
> > (B) a final determination of the property rights of the parties.

Id.

Helen argues that a deviation from the presumptive fifty-fifty split is warranted due to the amount of money Ronald collected from his Tier I and Tier II pension benefits during the dissolution proceedings. She also asserts that Ronald will receive $200 per month more in pension benefits than Helen, after her entitlement to the Tier II benefits. Helen, however, does not acknowledge that although Ronald received more in pension benefits during the proceedings, there were also three years during which he paid for all of Helen's expenses and provided her with $500 per month in spending money. Further, although Helen's argument regarding a $200 difference is accurate at this time, her

9

divorced spouse benefits will substantially increase on September 1, 2015 and nullify that income disparity. On the facts before us, we cannot say the circumstances are such that the court's refusal to deviate from an equal division of assets was an abuse of discretion.

## Conclusion

We conclude the trial court erred in its valuation and distribution of the IRA, but that the trial court did not abuse its discretion by declining to deviate from the presumptive equal division of marital property. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

BAKER, J., and KIRSCH, J., concur.